**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EBONE JONES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONTEFIORE MEDICAL CENTER, MONTEFIORE HEALTH SYSTEM, INC. S/H/A MONTEFIORE HEALTH SYSTEMS, INC.,<br><br>Defendants. | Case No. 1:26-cv-01460-ALC<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff Ebone Jones, individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. Defendant Montefiore Health System, Inc. is a not-for-profit corporation comprised of ten hospitals, including Defendant Montefiore Medical Center (collectively, "Defendants" or "Montefiore").

2. Montefiore employs dozens of Medical Audit Analysts and Senior Medical Audit Analysts ("Analysts"), including Plaintiff Ebone Jones ("Plaintiff" or "Jones").

3. Analysts perform clerical work and do not exercise discretion. Their job is to review and correct billing codes in patient charts for insurance purposes. Their primary job duties involve reviewing and inputting data.

4. Montefiore has a common policy and practice of assigning Analysts more work than they can complete each day. As a result of this common policy and practice, Montefiore

requires that Analysts regularly work in excess of 40 hours per work week ("Overtime Hours") in order to complete their assigned work.

5. Analysts regularly work Overtime Hours; however, Montefiore does not pay Analysts their earned overtime wages. Montefiore has refused to pay Analysts overtime premiums on the basis that it uniformly misclassifies them as exempt from federal and state overtime protections. This policy and practice is illegal because Analysts perform clerical work and do not exercise discretion, bringing them within coverage of federal and state overtime protections.

6. This lawsuit seeks to recover unpaid overtime wages, liquidated damages, statutory penalties, and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the supporting United States Department of Labor regulations, as well as New York Labor Law ("NYLL"), Art. 6 §§ 190 et seq., and Art. 19, §§ 650 et seq.; owed to Plaintiff and other exempt-classified Analysts employed by Montefiore.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy within the meaning of Article III of the U.S. Constitution.

9. Defendant Montefiore Health System, Inc. is a New York corporation with its principal place of business in this district. Montefiore Health System, Inc. operates Montefiore Medical Center. Accordingly, this Court has general personal jurisdiction over Defendants because they are "at home" in New York.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because both Defendants are headquartered in New York and in this district.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

### Plaintiff Ebone Jones

12. Jones is an adult individual and a resident of Elgin, South Carolina. During her employment with Montefiore, Jones was a resident of White Plains, NY.

13. Jones was employed by Montefiore as a Medical Audit Analyst in Tarrytown, NY from approximately 2021 to 2025. Jones was classified as exempt from federal and state overtime requirements.

14. At all times relevant to the Class and Collective Action Complaint, Jones was an "employee" within the meaning of all applicable statutes.

15. In the course of her employment, Jones regularly worked Overtime Hours. For example, in or around the week of March 24 to 30, 2024 Jones worked more than forty hours. However, Montefiore did not pay Jones overtime compensation of one and one-half times her regular rate for her Overtime Hours, including during the workweek of March 24 to 30, 2024. Accordingly, Jones was not paid all overtime wages owed.

16. The wage notices and wage statements that Montefiore provided to Jones throughout the course of her employment did not accurately reflect Jones' overtime rate or Overtime Hours.

17. In the course of her employment, Jones did not receive all wages earned in accordance with the agreed terms of employment on at least a semi-monthly basis.

**Defendants**

18. Defendant Montefiore Medical Center is the flagship hospital operated by Defendant Montefiore Health System, Inc., and is headquartered at 111 East 210th Street Bronx, NY 10467. At all relevant times, Montefiore Medical Center was an "employer" of Jones and other Analysts within the meaning of the FLSA and all applicable state laws.

19. Defendant Montefiore Health System, Inc. is a New York corporation headquartered at 555 South Broadway, Tarrytown, NY, United States, 10591. At all relevant times, Montefiore Health System was an "employer" of Jones and other Analysts within the meaning of the FLSA and all applicable state laws.

20. Collectively, Montefiore employs over 10,000 individuals, including dozens of Analysts. Montefiore maintains control, oversight, and direction over its employment practices and employees, including timekeeping, payroll, and other employment practices.

21. At all relevant times, Montefiore applied the same employment policies and practices to all Analysts, including policies and practices related to the assignment of accounts and the payment of overtime compensation.

22. Montefiore operates an enterprise engaged in commerce within the meaning of the FLSA.

23. Montefiore's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(2)(A)(ii).

**Single Enterprise and Joint Employer Allegations**

24. Defendant Montefiore Medical Center and Defendant Montefiore Health System, Inc. are a single integrated enterprise that employed and/or jointly employed Jones and other Analysts.

25. At all relevant times, Defendants have had interrelated operations, common management, common ownership and financial control, and centralized control over the labor relations of their workforce.

26. Montefiore Health System, Inc. is the parent corporation of Montefiore Medical Center. Montefiore Health System, Inc. is the sole corporate member of Montefiore Medical Center and has received establishment approval from the Public Health Council to participate in the governance and operations of Montefiore Medical Center.

27. Montefiore Medical Center generates the majority of Montefiore Health System, Inc.'s total operating revenue and total assets.

28. Montefiore Medical Center's May 23, 2025 MSRB Disclosure Report, **Exhibit 1**, includes the following organizational chart illustrating Montefiore Health System, Inc.'s control over Montefiore Medical Center:

The organizational chart below shows Montefiore Einstein and certain of its controlled affiliates:




29. Defendants market themselves to the public and to prospective employees as a single integrated entity.

30. Montefiore Health System, Inc. provides payroll and benefits services to Montefiore Medical Center, which the latter purchases from the former.

31. Montefiore Medical Center and Montefiore Health System, Inc. use common human resources systems to oversee their employees and maintain employment records,

including for Analysts. These common systems cover payroll, job postings and recruitment, timekeeping, scheduling, service tickets, training, and other human resources functions.

32. Alternatively, and/or cumulatively, Defendants constitute "joint employers" with respect to Jones and other Analysts based on the economic realities of the relationship. Specifically, they share authority regarding hiring and firing (as reflected by common recruitment systems), control over employee work schedules (as reflected by common scheduling and timekeeping systems), determination of the rate and method of payment (as reflected by common payroll systems and shared payroll charges), and maintenance of employment records (as reflected by the totality of shared human resources systems).

**FLSA Collective Action Allegations**

33. Plaintiff brings the First Cause of Action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and on behalf of the following collective:

> Persons who work or have worked for Montefiore Medical Center as exempt-classified "Medical Audit Analysts" and "Senior Medical Audit Analysts" in New York from three years prior to the commencement of this action through the date of final judgment in this matter ("the FLSA Collective Period") who elect to opt into this action ("FLSA Collective").

34. Plaintiff reserves the right to modify the proposed collective definition at a later stage of litigation.

35. The FLSA Collective includes dozens of Analysts similarly situated to Plaintiff who have been denied overtime compensation.

36. Plaintiff acts on behalf of both her own interests and the interests of current and former Montefiore Analysts. Plaintiff is a member of the FLSA Collective that she seeks to represent because she worked for Montefiore as an exempt-classified Medical Audit Analyst during the FLSA Collective Period.

37. Montefiore required or permitted FLSA Collective members to work Overtime Hours. Montefiore did not pay FLSA Collective members overtime compensation at a rate of one and one-half times the regular rate of pay for these Overtime Hours, as is required by the FLSA.

38. Montefiore applied the same unlawful policy—failing to pay required overtime compensation by misclassifying Analysts as exempt—to all FLSA Collective members.

39. Analysts have substantially similar job duties and are compensated through a substantially similar payment structure.

40. While employed as a Medical Audit Analyst, Plaintiff worked alongside Senior Medical Audit Analysts. Plaintiff observed that Senior Medical Audit Analysts and Medical Audit Analysts performed the same job duties, namely, reviewing and inputting data.

41. Montefiore was aware or should have been aware that Analysts were properly categorized as non-exempt, and thus, that it was required to pay FLSA Collective members an overtime premium of one and one-half times their regular rate of pay for Overtime Hours it required or permitted them to work.

42. Plaintiff is currently unaware of the identities of the FLSA Collective members. The FLSA Collective members are known to Montefiore, are readily identifiable, and can be located through Montefiore's records. The FLSA Collective members should be notified of and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b). Unless this Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by Montefiore.

## Class Action Allegations

43. Plaintiff brings the Second, Third, Fourth, and Fifth Causes of Action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the following class:

> Persons who work or have worked for Montefiore Medical Center as exempt-classified "Medical Audit Analysts" and "Senior Medical Audit Analysts" from three years prior to the commencement of this action through the date of final judgment in this matter ("the Class Period") in New York ("the Class").

44. The Class does not include Montefiore's management, legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Montefiore; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

45. Plaintiff reserves the right to modify the proposed class definition at a later stage of litigation.

46. The Class Members are readily ascertainable. The number and identity of Class Members are determinable from Montefiore's records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Montefiore's records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Montefiore's records. Notice can be provided by means permissible under Rule 23.

47. The Class is comprised of at least 50 persons. Accordingly, the Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The precise number of Class Members is unknown and within the sole knowledge of Montefiore.

48. Common questions of law and fact exist as to the Class that predominate over any questions solely affecting individual members of the Class, including, but not limited to:

a. Whether Montefiore unlawfully misclassified the Class Members (Analysts) as overtime exempt;

b. Whether Montefiore unlawfully failed to pay the Class overtime compensation owed, in violation of the NYLL, Art. 6 §§ 190 et seq., and Art. 19, §§ 650 et seq., and related regulations;

c. Whether Montefiore failed to furnish the Class with accurate statements of wages, hours worked, rates paid, gross wages, and net wages;

d. Whether Montefiore failed to furnish the Class with compliant wage notices, as required by the Wage Theft Prevention Act;

e. Whether Montefiore's violations of the NYLL were willful; and

f. The nature and extent of the Class's injuries and the appropriate measure of their damages under the NYLL.

49. Injunctive and declaratory relief are the predominate relief sought in this case. Montefiore has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the New York Class as a whole.

50. Plaintiff's claims are typical of the claims of the Class she seeks to represent, and she has no interest antagonistic to the Class. Like all other Class Members, Plaintiff worked as an Analyst for Montefiore in New York during the Class Period. While employed as a Medical Audit Analyst, Plaintiff worked alongside Senior Medical Audit Analysts and observed that they perform substantially similar work, namely, reviewing and inputting data. All Class Members,

including Plaintiff, performed similar job duties. Like all other Class Members, Jones was misclassified as exempt from overtime protections. Montefiore applied the same illegal policies and procedures to Plaintiff and all other Class Members, including failing to provide overtime premiums, accurate wage statements, and compliant wage notices. Montefiore's violations against Plaintiff were willful, as they were against all other Class Members.

51. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff understands that, as a class representative, she assumes a fiduciary responsibility to the Class to represent its interests fairly and adequately. Jones recognizes that as a class representative, she must represent and consider the interests of the Class just as she would represent and consider her own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Class. Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiff understands that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

52. Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

53. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. An individual plaintiff aggrieved by wage violations may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, so class action litigation is the only practical option for recovery for many Class

Members. The Class Members have been damaged and are entitled to recovery as a result of Montefiore's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Montefiore's practices.

54. Plaintiff is currently unaware of the identities of the Class Members. Accordingly, Montefiore should be required to provide Plaintiff with a list of all persons it employs in the state of New York as "Medical Audit Analysts" and "Senior Medical Audit Analysts" during the New York Class Period, along with their last known addresses, telephone numbers and e-mail addresses, so that Plaintiff can provide the Class with notice and the opportunity to make an informed decision about whether to participate in this litigation.

## Common Factual Allegations

55. Plaintiff, FLSA Collective members, and New York Class Members (collectively, "Class Members") are victims of Montefiore's common policy and plan to deprive Analysts of overtime compensation in violation of the FLSA and the NYLL by misclassifying them as exempt from overtime protections.

56. Under the FLSA and NYLL, an employee is eligible for overtime compensation unless an exemption applies.

57. The primary duties of Analysts do not fall under any of the exemptions under federal or state overtime laws. In particular, the "Administrative Exemption" does not apply to Analysts because their primary duties do not "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

58. Analysts' primary job duties are data validation and data entry. Montefiore uses standardized codes to identify various procedures and diagnoses ("Codes"). Analysts review patient charts, billing statements, and insurance claims to confirm that the Codes used for billing and insurance match what was actually provided to the patient. In performing this task, Analysts do not exercise independent discretion or judgment. Instead, they follow strict protocols and guidelines maintained by Montefiore. When documentation is missing, Analysts communicate with the treating providers to request missing documentation. In addition, Analysts pull reports regarding billing data and perform various data entry tasks, which is ultimately used by Montefiore for reporting and performance improvement. Analysts are not required to have a college education.

59. Montefiore was aware, or should have been aware, that Analysts' primary job duties were clerical and did not involve the exercise of discretion, and thus, that no exemption to federal or state overtime laws applies to Class Members' positions as Analysts. 29 C.F.R. § 541.202(e) ("The exercise of discretion and independent judgment . . . does not include recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work."); *Geret Dubois, M.D., Inc. v. R.I. Dep't of Labor & Training*, Nos. PC-2008-4846, PC-2008-4908, 2009 R.I. Super. LEXIS 156, at *40 (Super. Ct. Dec. 14, 2009) (finding that the primary duties of a "medical billing specialist" are "accurately viewed as 'clerical or secretarial work'" involving "'record[ing] or tabulat[ing]' the appropriate insurance billing codes following a patient visit, and perform[ing] the 'mechanical, repetitive, and recurrent' task of reviewing . . . coding for errors and submitting the claims pursuant to well-established policies and procedures." (quoting 29 C.F.R. § 541.202)). Montefiore did not ensure that its compensation practices with respect to Class Members complied with federal or state law.

60. Montefiore has a common policy and practice of assigning Analysts more work than they can complete in their normal work day. As a result of this common policy and practice, Analysts are regularly required to work, and regularly do work, Overtime Hours in order to complete their assigned work. Accordingly, Montefiore willfully and regularly requires and/or permits Analysts to work Overtime Hours. Montefiore assigned all work that Analysts performed. Thus, Montefiore knew or should have known that Overtime Hours were necessary for Analysts to satisfy job expectations.

61. At all relevant times, Montefiore had a willful policy and practice of not paying Analysts at a rate of one and one-half the regular rate of pay for their Overtime Hours. Montefiore was, or should have been, aware that the federal and state wage and hour laws required it to pay Analysts overtime compensation for Overtime Hours.

62. Montefiore did not keep accurate records of hours worked by Analysts.

63. Montefiore obscured its illegal practice of failing to pay required overtime compensation by omitting overtime rates and hours from Analysts' wage statements and wage notices.

64. At all relevant times, Montefiore maintained a practice of paying "Bonus-Incentive Plan" payments of approximately $20 per case to incentivize Analysts to work on additional cases beyond their normal workloads. Montefiore routinely delayed these payments for weeks or months after the work was performed. As a result, wage statements reflecting Bonus-Incentive Plan payments do not accurately identify the dates on which the underlying work was performed or the hours associated with Bonus-Incentive Plan work.

65. By failing to provide proper wage statements and wage notices, Montefiore failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified

by the New York State legislature. The New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. See N.Y. Spons. Mem., 2010 S.B. 8380. Written notices and wage statements function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of accurate statements entails significant harm to the employees' concrete interest in being paid properly.

66. Montefiore's failure to provide proper wage statements and wage notices allowed Montefiore to hide its wrongdoings from employees, who rely on the accuracy of such wage statements and wage notices. Had Montefiore provided Plaintiff and Class Members with proper wage statements and wage notices, Plaintiff and Class Members would have learned of their underpayments sooner. Montefiore's failure to provide accurate wage statements and wage notices, and its consequential cover-up of its failure to pay required overtime compensation, continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members.

67. By failing to pay overtime wages earned, Defendants failed to pay Class Members all wages earned on at least a semi-monthly basis.

68. As part of its regular business practice, Montefiore has intentionally, willfully, and repeatedly engaged in a policy and practice that violates the FLSA and the NYLL, including, but not limited to:

a. Willfully misclassifying Class Members as exempt from the protections of federal and state overtime laws;

b. Willfully failing to pay Class Members required overtime compensation for Overtime Hours;

c. Willfully failing to record all of the time that Class Members worked for the benefit of Montefiore;

d. Willfully failing to provide Class Members with accurate wage notices and wage statements;

69. Plaintiff sent Montefiore written correspondence on June 14, 2024 regarding her overtime claims. Upon information and belief, Montefiore did not thereafter change its policy and practice of misclassifying Analysts as exempt employees and failing to pay Analysts overtime premiums.

70. Throughout the Class Period, Montefiore's unlawful conduct has been widespread, repeated, and consistent.

**First Cause of Action**

**FLSA - Overtime Wages**
**29 U.S.C. §§ 201, et seq.**
**(On Behalf of Plaintiff Individually and the FLSA Collective)**

71. Plaintiff and the FLSA Collective reallege and incorporate by reference all allegations in all preceding paragraphs.

72. 29 U.S.C. § 207(a) requires covered employers to pay all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for each Overtime Hour worked.

73. During the FLSA Collective Period, Plaintiff and the FLSA Collective were non-exempt "employees" within the meaning of the FLSA.

74. During the FLSA Collective Period, Montefiore was the covered "employer" of Plaintiff and the FLSA Collective within the meaning of the FLSA.

75. During the FLSA Collective Period, Plaintiff and the FLSA Collective were entitled to the rights, protections and benefits provided under the FLSA.

76. During the FLSA Collective Period, Montefiore willfully violated the FLSA by failing to pay Plaintiff and the FLSA Collective overtime wages of one and one-half times their regular hourly rate for each Overtime Hour worked.

77. During the FLSA Collective Period, Montefiore knew that Plaintiff and the FLSA Collective worked more than 40 hours per workweek, but Montefiore did not pay them overtime compensation of one and one-half times their regular rate for their Overtime Hours.

78. Montefiore violated the FLSA by failing to pay Plaintiff and the FLSA collective at one and one-half times their regular rate for each Overtime Hour worked.

79. The foregoing conduct of Montefiore constitutes willful violations of the FLSA. Montefiore has no good faith justification or defense for failing to pay Plaintiff and the FLSA Collective the overtime wages mandated by the FLSA.

80. Because Montefiore's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

81. Under 29 U.S.C. § 216(b), Plaintiff and the FLSA Collective are entitled to recover the full amount of their wage underpayments during the three years preceding the filing of this Complaint, plus periods of equitable tolling, an award of costs and reasonable attorneys' fees incurred in pursuing this claim, an award of prejudgment interest paid at the applicable legal rate, and a penalty in the amount of 100% of the total payment due for the relevant period as Montefiore willfully had no good faith basis to believe their wage payments to Plaintiff and the FLSA Collective complied with the FLSA.

**Second Cause of Action**

**NYLL - Overtime Wages**
**Art. 19, §§ 650 et seq.**
**(On Behalf of Plaintiff Individually and the New York Class)**

82. Plaintiff and the New York Class reallege and incorporate by reference all allegations in all preceding paragraphs.

83. NYLL Article 19, §§ 650 et seq. and the supporting New York State Department of Labor Regulations require covered employers to pay all non-exempt employees at a wage rate of one and one-half times the employee's regular rate for each Overtime Hour worked. 12 N.Y.C.R.R. § 142-2.2.

84. During the New York Class Period, Plaintiff and the New York Class were non-exempt "employees" within the meaning of NYLL §§ 2(7), 651(5), 190(2), and 12 N.Y.C.R.R. § 142-2.14. Plaintiff and the NYLL Class are not exempt from overtime compensation as established by the commissioner's wage order or otherwise provided by New York State law or regulation.

85. During the New York Class Period, Montefiore was the "employer" of Plaintiff and the New York Class within the meaning of NYLL §§ 651(6) and 190(3).

86. During the New York Class Period, Plaintiff and the New York Class were entitled to the rights, protections and benefits provided under the NYLL.

87. During the New York Class Period, Montefiore willfully violated the NYLL by failing to pay Plaintiff and the New York Class all overtime wages of not less than one and one-half times their regular hourly rate for each Overtime Hour worked.

88. During the New York Class Period, Montefiore knew that Plaintiff and the New York Class worked more than 40 hours per workweek, but Montefiore did not pay them overtime compensation for their Overtime Hours.

89. During the New York Class Period, Montefiore violated the NYLL by failing to pay Plaintiff and the New York Class at one and one-half times their regular rate for each Overtime Hour worked.

90. During the New York Class Period, Montefiore willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the New York Class.

91. The foregoing conduct of Montefiore constitutes willful violations of the NYLL. Montefiore has no good faith justification or defense for failing to pay Plaintiff and the New York Class the overtime wages mandated by the NYLL or for failing to maintain time records as required by the NYLL.

92. Under NYLL § 663(1), Plaintiff and the New York Class are entitled to recover the full amount of their wage underpayments during the six years preceding the filing of this Complaint, plus periods of equitable tolling, an award of costs and reasonable attorneys' fees incurred in pursuing this claim, an award of prejudgment interest paid at the applicable legal rate, and a penalty in the amount of 100% of the total payment due for the relevant period.

## **Third Cause of Action**

**NYLL – Failure to Provide Compliant Wage Notices**
**Art. 6, §§ 190 et seq.**
**(On Behalf of Plaintiff Individually and the New York Class)**

93. Plaintiff and the New York Class reallege and incorporate by reference all allegations in all preceding paragraphs.

94. NYLL Article 6, § 195(1) requires employers to provide each employee with a notice containing information about the employee's wage rate. For non-exempt employees, the wage notice must state the regular hourly rate and overtime rate of pay.

95. During the New York Class Period, Montefiore failed to supply Plaintiff and the New York Class with wage notices including the overtime rate of pay as is required by NYLL Article 6, § 195(1). Montefiore's failure to provide compliant wage notices harmed Plaintiff and the New York Class by withholding information about the overtime compensation they were owed, thereby facilitating Montefiore's ongoing wage theft.

96. During the New York Class Period, Montefiore's failure to supply Plaintiff and the New York Class with accurate wage notices was willful. Montefiore has no good faith justification or defense for failing to provide legally-required wage notices mandated by NYLL § 195(1).

97. Due to Montefiore's willful violations of NYLL, Article 6, § 195(1), Plaintiff and the New York Class are entitled to statutory penalties of $50 for each workday, up to a total of $5,000 for each Class Member, that Montefiore failed to provide them with wage notices upon hire, in addition to reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

## Fourth Cause of Action

**NYLL – Failure to Provide Accurate Wage Statements**
**Art. 6, §§ 190 et seq.**
**(On Behalf of Plaintiff Individually and the New York Class)**

98. Plaintiff and the New York Class reallege and incorporate by reference all allegations in all preceding paragraphs.

99. NYLL Article 6, § 195(3) requires employers to provide employees with a wage statement each pay period that includes their regular hourly rate(s) of pay, their overtime rate(s) of pay, their number of regular hours worked, their number of overtime hours worked, and the dates of work covered by that payment of wages.

100. During the New York Class Period, Montefiore failed to provide Plaintiff and the New York Class with a wage statement each pay period that includes their regular hourly rate(s) of pay, their overtime rate(s) of pay, their number of regular hours worked, their number of overtime hours worked, and the dates of work covered by that payment of wages as is required by NYLL Article 6, § 195(3). Montefiore's failure to provide accurate wage statements harmed Plaintiff and the New York Class by withholding information about the overtime compensation they were owed and obscuring which work was covered by which wage payments, thereby facilitating Montefiore's ongoing wage theft.

101. During the New York Class Period, Montefiore's failure to supply Plaintiff and the New York Class with accurate wage statements was willful. Montefiore has no good faith justification or defense for failing to provide legally- required wage statements mandated by NYLL § 195(3).

102. Due to Montefiore's willful violations of NYLL, Article 6, § 195(3), Plaintiff and the New York Class are entitled to statutory penalties of $250 for each workweek that Defendant failed to provide them with accurate wage statements, up to a total of $5,000, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the FLSA Collective and the New York Class, requests the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to

assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

B. Toll the statute of limitations on the claims of the FLSA Collective until the FLSA Collective has been provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their rights to opt in as plaintiffs;

C. Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the New York Class;

D. Designation of Plaintiff as the Representative of the New York Class;

E. Designation of Plaintiff's counsel of record as Class Counsel for the New York Class;

F. An award of damages to be paid by Montefiore, including unpaid overtime pay, liquidated damages, statutory penalties, restitution, and pre-judgment and post-judgment interest, as permitted by the FLSA and NYLL;

G. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to, an order enjoining Montefiore from continuing its unlawful practices under the FLSA and NYLL and/or a declaration that Montefiore's acts violate the FLSA and NYLL;

H. A reasonable service award for Plaintiff to compensate her for the time she spent attempting to recover wages for the FLSA Collective and New York Class and for the risks she took in doing so;

I. Attorneys' fees and costs of the action; and

J. Such other relief as this Court shall deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure 38 or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated: June 3, 2026
New York, New York

Respectfully submitted,
*/s/ Molly Brooks*
Molly Brooks

**OUTTEN & GOLDEN LLP**
Molly Brooks
685 Third Ave., 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

Adam Koshkin
Allison I. Aaronson
1999 Harrison Street, Suite 1500
Oakland, California 94612
Telephone: (415) 638-8800

*Attorneys for Plaintiff and the Putative FLSA Collective and Rule 23 Class*